WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elizabeth Walters,<br><br>          Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>          Defendant. | No. CV-25-00451-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Elizabeth Therese Walters' ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("SSA," "Commissioner," or "Defendant") denial of Social Security benefits. (Doc. 8-3). The appeal is fully briefed, (Doc. 13, 18, 19), and the Court now rules.

**I.   BACKGROUND**

On appeal, the Court considers whether the ALJ erred by failing "to articulate clear and convincing reasons to discount [Plaintiff's] symptom testimony." (Doc. 13 at 2).

    **A. Factual Overview**

Plaintiff applied for Social Security disability benefits on February 24, 2021, alleging disabilities beginning on January 29, 2021, including: a left hip replacement; degenerative disc disease of the cervical and lumbar spine; and degenerative change of the left thumb. (Doc. 8-3 at 20, 22). The SSA initially denied Plaintiff's claims on September 29, 2021, and upon reconsideration on February 15, 2023. (Doc. 8-3 at 20). The ALJ issued his decision on January 19, 2024, finding that Plaintiff was not disabled. (Doc. 8-3 at 30–

31). The SSA Appeals Council denied Plaintiff's request for review of the ALJ's decision and adopted it as final on January 13, 2025. (Doc. 13 at 2).

Plaintiff filed the present appeal following this unfavorable decision. (Doc. 1).

### B.  The SSA's Five-Step Evaluation Process

To qualify for social security disability insurance benefits, a claimant must show that she "is under a disability." 42 U.S.C. § 423(a)(1)(E). To be "under a disability," the claimant must be unable to engage in "substantial gainful activity" due to any medically determinable physical or mental impairment. *Id.* § 423(d)(1). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 423(d)(2). The SSA has created a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." 20 C.F.R. § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 404.1520(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 404.1520(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ

1  must assess the claimant's "residual functional capacity" ("RFC") before proceeding to
2  Step Four. *Id.* § 404.1520(a)(4)(iii), (e). The claimant's RFC refers to her ability to perform
3  physical and mental work activities "despite [her] limitations," based on all relevant
4  evidence in the case record. *Id.* § 404.1545(a)(1). To determine a claimant's RFC, the ALJ
5  must consider all the claimant's impairments, including those that are not "severe," and
6  any related symptoms that "affect what [the claimant] can do in a work setting." *Id*. §
7  404.1545(a)(1)–(2).

8  At Step Four, the ALJ determines whether the claimant has the RFC to perform the
9  physical and mental demands of "[her] past relevant work." *Id.* § 404.1520(a)(4)(iv), (e).
10 "Past relevant work" is work the claimant has "done within the past five years that was
11 substantial gainful activity." *Id.* § 404.1560(b)(1)(i). If the claimant has the RFC to perform
12 her past relevant work, the ALJ will find the claimant is not disabled. *Id*. §
13 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will
14 proceed to Step Five.

15 Finally, at Step Five, the ALJ considers whether the claimant "can make an
16 adjustment to other work," considering her RFC, age, education, and work experience. *Id.*
17 § 404.1520(a)(v). If so, the ALJ will find the claimant not disabled. *Id*. If the claimant
18 cannot make this adjustment, the ALJ will find the opposite. *Id.*

### C. The ALJ's Application of the Factors

20 At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful
21 activity between January 29, 2021, the alleged onset date of disability, and December 31,
22 2022, Plaintiff's date last insured. (Doc. 8-3 at 22). At Step Two, the ALJ determined that
23 Plaintiff had the following severe impairments: left hip replacement; degenerative disc
24 disease of the cervical and lumbar spine; and degenerative change of the left thumb. (Doc.
25 8-3 at 22). At Step Three, the ALJ found that Plaintiff did not have an impairment or
26 combination of impairments that met or medically equaled the severity of one of the listed
27 impairments in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (Doc. 8-3 at 24). The ALJ
28 determined Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §

404.1567(b), with the following limitations:

> [S]he could lift and/or carry 20 pounds occasionally and ten pounds frequently; could stand or walk six hours and sit six hours in an eight-hour workday; should never climb ropes, ladders or scaffolds; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could frequently handle and finger on the left (non-dominant) hand; and should avoid concentrated exposure to unprotected heights and moving and dangerous machinery.

(Doc. 8-3 at 25–26). At Step Four, the ALJ found Plaintiff could perform her past relevant work as an office manager because this work did not require the performance of work-related activities precluded by Plaintiff's RFC. (Doc. 8-3 at 30). Because the ALJ found Plaintiff could perform her past relevant work, he did not proceed to Step Five and ultimately concluded Plaintiff was not disabled under the Social Security Act during the relevant period. (Doc. 8-3 at 30).

## II.    LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). The Court, in its review, must consider the record in its entirety, "weighing both the evidence that supports and evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2007)).

The ALJ—not this Court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). Thus, when the evidence of record could result in more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th

1  Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational
2  interpretation, [the Court] must defer to the ALJ's conclusion."). Further, this Court may
3  only review the reasons the ALJ provides in the disability determination and "may not
4  affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

### III.    DISCUSSION

Plaintiff generally argues that the ALJ failed to articulate clear and convincing reasons to discount Plaintiff's symptom testimony regarding the extent of her pain. (Doc. 13 at 5–6).

### 1. Legal Standard for Evaluation of Subjective Symptom Testimony

In assessing the credibility of a claimant's subjective symptom testimony, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (quoting *Bunnell*, 947 F.2d at 345 (cleaned up)).

If there is such objective evidence, and "no evidence of malingering," "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). The ALJ's credibility findings must be specific enough to demonstrate the ALJ rejected a claimant's testimony on permissible, rather than merely arbitrary, grounds. *Rollins*, 261 F.3d at 856. "The standard isn't whether [a reviewing] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the *power* to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (emphasis added).

When assessing witness credibility, an ALJ may consider "(1) ordinary techniques

- 5 -

of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1282).

### 2. The ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony

Plaintiff testified that she was unable to work on a regular and continuing basis because her pain and pain-related fatigue inhibits her ability to concentrate or "function very well." (Doc. 8-3 at 50; Doc. 13 at 6). The ALJ found that although Plaintiff's medically determinable impairments "could reasonably be expected to cause some of [her] alleged symptoms," Plaintiff's testimony about the severity of her symptoms was inconsistent with the medical evidence, her course of treatment, and her daily activities. (Doc. 8-3 at 26–29).

Plaintiff asserts that the ALJ failed to explain how Plaintiff's statements "that she was distracted due to pain and fatigue such that she could not maintain semi-skilled work were inconsistent with the record as a whole." (Doc. 13 at 6). Plaintiff specifically challenges the ALJ's interpretation of the medical evidence, and his analysis regarding Plaintiff's course of treatment and daily activities. (Doc. 13 at 6–14). The Court addresses each of these three arguments in turn. Because the ALJ conceded that Plaintiff presented objective evidence of an impairment which could reasonably be expected to cause her pain, the sole question the Court addresses is whether the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony. *Lingenfelter*, 504 F.3d at 1036; *Rollins*, 261 F.3d at 856.

#### a. Objective Medical Evidence

##### i. Extent of Plaintiff's Pain

The ALJ rejected Plaintiff's testimony regarding the extent of her pain because "the medical evidence of record did not fully support [her] allegations." (Doc. 8-3 at 26). The ALJ recounted the medical evidence supporting Plaintiff's impairments, including: MRI

- 6 -

scans of Plaintiff's spine from January 2019, September 2020, and July 2023; evidence of Plaintiff's left hip replacement; and evidence of Plaintiff's thumb degeneration. (Doc. 8-3 at 27). The ALJ explained that the RFC accounted for Plaintiff's "musculoskeletal impairments" by: "including several postural limitations"; limiting Plaintiff's ability to sit, stand, and walk; and reducing her lifting and carrying abilities. (Doc 8-3 at 27). But the ALJ noted that "further limitations" beyond those accounted for in Plaintiff's RFC "were not supported by the record," because "imaging of the spine did not reflect the most serious impairments." (Doc. 8-3 at 27). The ALJ noted that the 2019 and 2023 MRI results revealed mild and stable findings, finding that "the more severe designation of degenerative disc disease or stenosis and the nerve compression often associated with the most severe spinal pain were not present." (Doc. 8-3 at 27).

The Ninth Circuit Court of Appeals has repeatedly held that ALJs cannot discredit a claimant's subjective pain testimony solely because the degree of alleged pain is not fully corroborated by objective medical evidence. *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024); *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Rollins*, 261 F.3d at 857. This is because "subjective pain is not always verifiable through a physical examination," *Ferguson*, 95 F.4th at 1200 (quoting *Glanden v. Kijakazi*, 86 F.4th 838, 847 (9th Cir. 2023)), and "pain testimony may establish greater limitations than can medical evidence alone," *Burch*, 400 F.3d at 680. "Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony." *Ferguson*, 95 F.4th at 1200 (emphasis in original).

Here, the ALJ did exactly what the Ninth Circuit Court of Appeals prohibits—he discredited Plaintiff's testimony about the "intensity, persistence, and limiting effects" of her pain because the medical evidence "*did not fully support*" her allegations. (Doc. 8-3 at 26). The ALJ referenced the imaging of Plaintiff's spine and concluded the images "did not reflect the most severe impairments" or show "the most severe spinal pain." (Doc. 8-3

- 7 -

at 26). By relying on the *absence* of positive medical evidence to discredit Plaintiff's testimony about the severity of her pain, the ALJ erred. *Ferguson*, 95 F.4th at 1201 ("[A]s [the Ninth Circuit Court of Appeals] ha[s] repeatedly held, at step two of the symptom analysis, the ALJ cannot rely on an absence of positive medical evidence to discredit a claimant's subjective symptom testimony.").

However, the ALJ did not reject Plaintiff's subjective pain testimony solely because it was not fully corroborated by the objective medical evidence—the ALJ also cited Plaintiff's course of treatment and daily activities as reasons for discrediting her. Because the ALJ permissibly discredited Plaintiff's testimony based on her daily activities, as discussed below, his error was harmless. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (indicating that if the ALJ rejects a Plaintiff's symptom testimony for a single permissible purpose, then the ALJ's errant rejection of the testimony for other additional reasons is harmless).

ii.  Plaintiff's "Mental Fog"

Plaintiff struggled to sleep because of her physical pain, which she alleges caused "mental fog," i.e., fatigue and difficulty concentrating. (Doc. 8-3 at 45). She alleged she was disabled because her mental fog left her unable to maintain concentration to complete semi-skilled work. (Doc. 13 at 6). The ALJ addressed this complaint at Step Two and concluded that Plaintiff's "allegation of mental fog was not a medically determinable impairment," explaining that Plaintiff experienced no limitations remembering, understanding, and processing information. (Doc. 8-3 at 23).

Plaintiff argues that the ALJ should not have discussed her mental fog symptoms at Step Two because "symptoms are not impairments" and that she did not allege any mental impairment—rather, she alleged *physical* impairments resulting in the reduced ability to concentrate due to fatigue. (Doc. 13 at 10). Plaintiff acknowledges that "the ALJ's Step Two analysis of mental impairments *does* discuss whether there is objective evidence of these subjective symptoms," but argues the ALJ's analysis "does not explain how the record is inconsistent with [Plaintiff's] statements that difficulty concentrating due to pain

- 8 -

and fatigue limits her to unskilled work." (Doc. 13 at 11) (emphasis added).

The Court is unconcerned about *where* in the decision the ALJ analyzed Plaintiff's mental fog symptoms. The relevant question is whether the ALJ's conclusion—that the extent of Plaintiff's alleged issues concentrating were inconsistent with the medical evidence—is supported by substantial evidence. The Court concludes that it is. A consultative mental-health examiner found that Plaintiff "demonstrated no difficulties with attention, concentration or memory," (Doc. 10-1 at 33), and treating physicians similarly observed normal levels of attention, cognition, and memory, (Doc. 10 at 46, Doc. 10-6 at 5). The ALJ also noted Plaintiff's self-reported activities that required normal concentration, including driving, using her computer, paying bills, managing finances, reading, and doing beadwork. (Doc. 8-3 at 24, citing Doc. 8-8 at 22–32). Relying on this evidence, the ALJ permissibly concluded that Plaintiff possessed a greater ability to concentrate than she alleged. *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ.").

### b.  Plaintiff's Course of Treatment

The ALJ found that Plaintiff's course of treatment "reflect[ed] upon the severity of . . . [her] impairments." (Doc. 8-3 at 28). The ALJ summarized Plaintiff's course of treatment as follows:

> The claimant sought therapies to address her pain, including neuromuscular therapy on her upper body and neck (Exhibit 4F), physical therapy (Exhibits 5F; 6F), chiropractic therapy (Exhibit 13F), massage therapy, and acupuncture (Exhibits 21F at p. 1; 30F). The pain was not associated with any focal weakness or gait dysfunction (Exhibit 21F at p. 1), and more intensive treatment was not needed. Gabapentin had been prescribed since 2016 and Celebrex for a longer amount of time (Exhibit 13E). Both medications were still prescribed for her in October 2023 (Exhibit 30F at p. 1), with the consistency of the medication suggesting they were generally effective. The claimant declined a bursal injection for left hip bursitis and she stated that she would continue with physical therapy (Exhibit 3F at p. 6). Through October of 2021, the claimant had not reached the point of wanting surgery on her thumb (Exhibit 31F at p. 111), and surgery was not considered for degenerative disc disease.

(Doc. 8-3 at 28). The ALJ concluded that Plaintiff's "relatively conservative treatment" did not support greater limitations than those reflected in her RFC. (*See* Doc. 8-3 at 29).

Evidence of conservative treatment is a sufficient reason to discount a claimant's testimony regarding the disabling nature of their pain. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). However, before relying on a claimant's conservative treatment to discount her subjective symptom testimony, the ALJ "must consider possible reasons" why the claimant did not "seek treatment consistent with the degree of . . . her complaints." SSR 16-3P, 2017 WL 5180304, at *9 (Oct. 25, 2017). The ALJ must explain in his written decision how he "considered the [claimant's] reasons [for not pursuing treatment consistent with the degree of her alleged pain] in [his] evaluation of the [claimant's] symptoms." *See id.* at *10. An ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." *Id.* at *9.

Plaintiff argues the ALJ erred by citing Plaintiff's course of treatment as a reason to discredit her symptom testimony because he failed to explore reasons why she did not seek treatment consistent with the degree of her complaints. (Doc. 13 at 12 (citing SSR 16-3P)).[1] Defendant contends "there must first be reasons for the ALJ to consider," and that, because "Plaintiff does not identify any reasons why she did not pursue more aggressive treatment," the ALJ did not err. (Doc. 18 at 9–9).

The caselaw is mixed as to what triggers an ALJ's obligation to consider reasons that may explain a claimant's failure to comply with or pursue certain treatment—some cases suggest this obligation arises only when *the claimant* provides reasons to explain their conduct, while other cases indicate that *the ALJ* must *sua sponte* inquire about reasons to explain inconsistencies between a claimant's symptom testimony and conduct. *Compare Desiderio v. Comm'r of Soc. Sec. Admin.*, No. CV-17-04058-PHX-BSB, 2019 WL 549458,

---

[1] Plaintiff also criticizes the ALJ's course-of-treatment analysis because "disability is not reserved for surgical candidates." (Doc. 13 at 11). But, as Defendant points out, the ALJ did not find Plaintiff needed to undergo surgery to show that her pain was disabling. (*See* Doc. 18 at 8). Rather, the ALJ, relying on Plaintiff's rejection of surgery and steroid injections, concluded that her pain was not as severe as she claimed.

at *9–10 (D. Ariz. Feb. 12, 2019) (ALJ's decision to discredit claimant's testimony because she had a gap in treatment was error because the ALJ "did not inquire about the gaps or inconsistencies in treatment" during the administrative hearing) *and Wilmot v. Comm'r of Soc. Sec. Admin.*, No. CV-21-01393-PHX-SPL (JZB), 2022 WL 18810954, at *5–6 (D. Ariz. Nov. 17, 2022) (same), *report and recommendation adopted*, No. CV-21-01393-PHX-SPL, 2023 WL 2140483 (D. Ariz. Feb. 21, 2023), *aff'd sub nom. Wilmot v. O'Malley*, No. 23-15603, 2024 WL 1477396 (9th Cir. Apr. 5, 2024) *with Sperry v. Comm'r of Soc. Sec. Admin.*, No. CV-18-01484-PHX-JAT, 2019 WL 1513203, at *7–8 (D. Ariz. Apr. 8, 2019) (ALJ did not err by failing to investigate claimant's gap in treatment and discrediting her testimony on that basis because claimant did not allege any reasons for her failure to pursue treatment) *and Smith v. Comm'r of Soc. Sec. Admin.*, No. CV-22-01537-PHX-JAT, 2023 WL 5622174 (D. Ariz. Aug. 31, 2023) (ALJ's decision not to discuss possible reasons for claimant's significant gap in treatment was not error because claimant failed to "mention or try to explain the significant gap in [her] treatment" at the administrative hearing), *rev'd and remanded sub nom. Smith v. O'Malley*, No. 23-3220, 2024 WL 4879472 (9th Cir. Nov. 25, 2024) (deciding there was not a gap in treatment because claimant had her medication re-filled).

Here, the ALJ recounted Plaintiff's treatment, including neuromuscular therapy, physical therapy, chiropractic therapy, massage therapy, acupuncture, and Plaintiff's use of various pain medications. (Doc. 8-3 at 28). The ALJ noted that: surgery was not considered for Plaintiff's degenerative disc disease; Plaintiff declined a bursal injection for left hip bursitis, opting for physical therapy instead; and Plaintiff declined surgery for her thumb. (Doc. 8-3 at 29). At the administrative hearing, the ALJ did not question Plaintiff about her treatment, or ask why she declined more aggressive treatment like steroid injections or surgery. The ALJ's decision merely concluded that Plaintiff's treatment was "relatively conservative" and did not support the extent of her claimed pain. (Doc. 8-3 at 29). Plaintiff's brief does not offer any insight into Plaintiff's decision to decline more aggressive treatment to combat her pain.

Ultimately, the Court need not determine whether the ALJ erred by not inquiring into Plaintiff's reasoning for declining steroid injections and surgery to treat her allegedly disabling pain because the ALJ rejected her testimony on other permissible grounds, as discussed below. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (indicating that if the ALJ rejects a Plaintiff's symptom testimony for a single permissible purpose, then the ALJ's errant rejection of the testimony for other additional reasons is harmless).

c. Plaintiff's Daily Activities

The ALJ found that Plaintiff's testimony regarding the disabling nature of her pain was inconsistent with her daily activities, which "were indicative of greater functional capacity." (Doc. 8-3 at 28). The ALJ explained that Plaintiff

> reported doing things that were consistent with light activity, such as handling personal care, preparing meals, doing light housekeeping, performing gardening, doing laundry, shopping, and driving. The claimant also did things that demonstrated normal use of her hands, such as using a computer, texting, using emails, and doing beadwork (Exhibit 5E). The claimant was noted to be a caregiver for her mother and stepsister in 2021, helping them with groceries and appointments (Exhibit 32F at p. 115).

(Doc. 8-3 at 28–29). The ALJ also noted Plaintiff's ability to pay bills and manage her finances. (Doc. 8-3 at 24).

Plaintiff argues that the ALJ failed to explain how Plaintiff's testimony regarding the severity of her symptoms was inconsistent with her daily activities. (Doc. 13 at 13). But Plaintiff's ability to garden, clean her home, cook for herself, participate in crafts like beadwork, and manage her finances, among other tasks, could reasonably be interpreted as inconsistent with Plaintiff's claim that her pain and difficulty concentrating wholly precluded her from returning to her sedentary job as an office manager. Accordingly, the Court finds the ALJ's decision to discredit Plaintiff based on her daily activities is supported by substantial evidence. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (plaintiff's ability to "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries" could be seen as inconsistent with "the presence of a condition which would preclude all work activity"); *Batson*, 359 F.3d at 1198 (the

reviewing court must defer to the ALJ's conclusion when the evidence results in "more than one rational interpretation").

## IV.     ALTERNATIVE PROCEEDINGS

Finally, Plaintiff requests remand for reconsideration of the ALJ's decision. (Doc. 13 at 14). Because the Court is upholding the ALJ's decision, the Court denies Plaintiff's request for remand.

## V.     CONCLUSION

For the following reasons,

**IT IS ORDERED** that the ALJ's decision is AFFIRMED.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 14th day of January, 2026.

James A. Teilborg
Senior United States District Judge